IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CAROLE A. TRENTIN, )
)
        Plaintiff, )
)
v. )   2:05cv1353
)   Electronic Filing
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
)
        Defendant. )

## MEMORANDUM JUDGMENT ORDER

AND NOW, this 19th day of March, 2007, upon due consideration of the parties' cross motions for summary judgment pursuant to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for disability insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act ("Act"), IT IS ORDERED that the Commissioner's motion for summary judgment (Doc. No. 9) be, and the same hereby is, **granted** and plaintiff's motion for summary judgment (Doc. No. 7) be, and the same hereby is, **denied**. Accordingly, judgment will be entered in favor of the Commissioner and against plaintiff by separate order in accordance with Federal Rule of Civil Procedure 58.

    The Commissioner's findings and conclusions leading to a determination that a claimant is not "disabled" must be supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 401 (1971); Stunkard v. Secretary of Health and Human Services, 841 F.2d 57, 59 (3d Cir. 1988). The task of this court in reviewing the decision below is "to determine whether there is substantial evidence on the record to support the ALJ's decision." Burnett v. Commissioner of Social Security, 220 F.3d 112, 118 (3d Cir. 2000). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Morales v.

1

Aphel, 225 F.3d 310, 316 (3d Cir. 2000)(quoting Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)).

As the fact finder, the administrative law judge ("ALJ") has an obligation to weight all the facts and evidence of record and may accept or reject any evidence if the ALJ explains the reasons for doing so. Plummer, 186 F.3d at 429. This includes crediting or discounting a claimant's complaints of pain and/or subjective description of the limitations caused by his or her impairments. Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983); Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999). And where the findings of fact leading to the decision of the Commissioner are supported by substantial evidence, a reviewing court is bound by those findings, even if it would have decided the inquiry differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2000). But where a review of the entire record reveals that the Commissioner's decision is not supported by substantial evidence, the court has an obligation to reverse the decision and remand with direction to grant benefits or conduct further proceedings. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984). A remand with direction to grant benefits is appropriate only when substantial evidence on the record as a whole indicates the claimant is disabled and entitled to benefits. Id. at 221-22.

Plaintiff seeks review of the ALJ's July 13, 2005, decision denying her application for benefits pursuant to a finding that although plaintiff's ability to engage in substantial gainful activity is restricted by limitations resulting from the severe impairments of hypertension, a cervical spine disorder, a depressive disorder and obesity, plaintiff retains the residual functional capacity to perform a significant range of light work notwithstanding mild functional limitations in completing tasks and a need to avoid frequent lifting and carrying. A vocational expert identified the position of companion sitter as a job that would accommodate these limitations and restrictions. The Appeals Council denied plaintiff's request for review and the instant action followed.

Plaintiff was 50 years of age at the time the ALJ issued his decision. R. 33. Plaintiff

graduated from high school and has previous experience working as a nurse's aid, a position she held for approximately 20 years. R. 84. While working as a nurse's aid her duties included lifting, bathing, and feeding patients, recording patients' vital signs, and accounting for lab specimens. R. 84, 101. Plaintiff lives with and cares for her grandson. R. 92. Since her mother's death, plaintiff has been the primary caretaker for her father, who lives next door. R.92.

Plaintiff suffers from cervical spine and depressive disorders. On February 2, 2002, plaintiff treated with Mohan M. Patel, M.D., who noted that she suffered from back pain, anxiety, and depression. R. 163. On June 13, 2002, Dr. Patel indicated plaintiff suffered from left sided chest pain and was under a lot of stress due to the loss of her mother. R. 163. On June 28, 2002, and September 13, 2002, Dr. Patel observed that plaintiff was still experiencing depression, but her chest pains had subsided and there was no indication of any other physical problems. R. 164.

Zheng Wang, M.D., treated plaintiff on October 30, 2002, for complaints of bilateral arm weakness and numbness. R. 196. He noted plaintiff had normal cervical and shoulder range of motion and mildly decreased motor strength. R. 196. After conducting an EMG and nerve conduction study, Dr. Wang found evidence of a possible cervical radiculopathy at the C-5 level. R. 197. Accordingly, he recommended a MRI. R. 197.

On December 30, 2002, plaintiff underwent a cervical MRI that, according to Paul Reilly, M.D., revealed a small central disc protrusion at C4-C5 with a mild disc bulge at C3-C4 and C5-C6. R. 172. Consequently, plaintiff began physical therapy in January of 2003, which resolved some of her symptoms. R. 173-183.

Plaintiff resumed treatment with Dr. Patel on July 16, 2003. R. 198. Dr. Patel noted that she continued to have "pins and needles" in her upper extremities, but he found no weakness. R. 198. Plaintiff had normal sensation and reflexes, was able to squat, walk on her heels and toes, and walked with a normal gait. R. 200. Dr. Patel further observed that plaintiff had normal power in her extremities. R. 200. Nevertheless, he opined that plaintiff could not frequently

carry more than 2-3 pounds or frequently lift more than 10 lbs; in contrast, he concluded that plaintiff had the capacity to sit for six hours and stand or walk for six or more hours. R. 226.

On September 17, 2003, Raymond Walker Jr., a state agency psychologist, completed a psychiatric review form. He indicated plaintiff suffered from an affective disorder that was not severe, resulting in mild restrictions in her daily living activities and in maintaining concentration, persistence and pace. R. 206-16. He found no limitation in social functioning. R. 216.

The record also includes a Residual Functional Capacity Assessment ("RFC")[1]. R. 219-225. After reviewing the medical reports from Dr. Wang and Dr. Patel, Dr. Karr concluded that plaintiff was limited to lifting and/or carrying 20 pounds occasionally and 10 pounds frequently. R. 220. Furthermore, he opined that plaintiff can stand, walk, or sit for six hours in an eight-hour workday. R. 220.

In July of 2004, plaintiff began therapy sessions with Sandra Crowley-Lindstrom, a certified social worker, in an attempt to lessen her depression and anxiety. R. 236-37, 241, 245-46. Ms. Crowley-Lindstrom reported that plaintiff made progress towards her goal of decreasing her depression. R. 236-37. For example, plaintiff began grooming herself, associating with friends, and talking about her future. R. 236.

After reviewing the various findings and assessments in plaintiff's medical records and reports, the ALJ concluded that although plaintiff suffers from significant limitations as a result of her cervical spine and depressive disorders, the record as a whole failed to support the degree of pain and limitation claimed by plaintiff. In support of this assessment the ALJ noted that plaintiff's treatment had been inconsistent and intermittent. R. 21. In addition, her medical history showed continued improvement and she had normal strength. R. 21. The ALJ also observed that plaintiff could perform the activities of daily living, as well as be the primary

---

[1] Although the RFC lacks a physician signature page, it is clear that it was an assessment of plaintiff and was completed during the relevant time period. R. 219-225. It is also readily apparent that the RFC was completed by Dilip S. Karr, M.D. See R. 52, 264.

caretaker for her father without significant difficulties. R. 21. Specifically, plaintiff indicated she is able to prepare meals, perform household chores, operate a car, grocery shop and load and unload shopping bags from the car. R. 18. The ALJ concluded that a finding of disability was unwarranted based solely on plaintiff's subjective complaints of pain given her "wide variety of daily activities, intermittent medical care, non-compliance with the recommendations of her treating and examining physicians, positive reports from her treating physicians, and the use of pain medications for a very short period of time." R. 21-22.

With regard to plaintiff's depressive symptoms, the ALJ concluded that plaintiff only suffers from "'mild' functional limitations with activities of daily living and when maintaining concentration, persistence, and pace, and 'no' functional limitations when maintaining social functioning." R. 22. He reasoned that she could concentrate well enough to make decisions, pay bills, shop, read, drive, watch television, and cooperate in an interview. He further found the psychiatric review form completed by the state agency psychologist supported this assessment. R. 22.

After weighing the similarities and inconsistencies between the physicians, the ALJ determined that plaintiff "retains the residual functional capacity to perform a significant amount of work at the light level of exertion." R. 23. And after considering the testimony of a vocational expert, he determined that plaintiff retained transferrable skills from her previous job as a nurse's aide, thus permitting her to perform the position of home health care assistant/companion sitter as it normally is performed in the national economy. R 23-24.

Plaintiff contends the ALJ erred in failing to obtain vocational testimony that she could perform work that exists in the national or local economy. She further contends the ALJ erred in relying on the unsigned RFC assessment and that the assessment is contrary to the ALJ's ultimate findings in any event. The government contends the record contains substantial evidence to support the ALJ's assessments and conclusions.

There is substantial evidence to support the ALJ's decision that plaintiff could work as a

5

companion sitter, an occupation that exists in significant numbers in the national and local economy. Plaintiff argues that the vocational expert did not identify any jobs that she could perform and the ALJ's decision is fraught with inconsistencies and contradictions, resulting in an erroneous assessment of her ability to perform substantial gainful activity. She further contends the ALJ's residual functional capacity assessment concerning her physical abilities was sufficiently undermined by the opinions and assessments of her treating physician. Each of these positions is unavailing.

Plaintiff asserts the vocational expert did not provide substantial evidence concerning her ability to perform work in the national economy, but her reading of the record is incorrect, as the vocational expert clearly indicated a number of jobs exist in the national and local economy that plaintiff can perform. R. 46. Although the ALJ's decision contains inconsistencies due to what this court deems to be typographical errors, careful review of the record demonstrates that remand is unnecessary, as this court is able to identify the ALJ's findings and effectively perform its review function.

The ALJ initially notes that plaintiff has transferrable skills, but thereafter indicates she does not. R. 23, 25. Notwithstanding this inconsistency, it is clear from the hearing transcript that the ALJ found plaintiff to have transferrable skills. R. 45. The vocational expert unequivocally testified that plaintiff's previous work as a nurse's aid was a semi-skilled job that fostered skills transferrable to a job as a companion sitter. R. 45. The vocational expert further testified that a personal homecare aid is essentially the same as a companion sitter, and that there are approximately 7,300 of these positions in Pennsylvania, and 220,000 in the United States. R. 46.

According to the Dictionary of Occupational Titles, a companion sitter "cares for elderly, handicapped, or convalescent persons" by performing tasks such as reading aloud, playing games with the employer, accompanying the employer on trips and outings, and preparing and serving meals. Dictionary of Occupational Titles (DOT) at 309.677-010. The vocational expert further

explained that someone with a mild to moderate affective disorder, like plaintiff, could work as a companion sitter. R. 48.

Plaintiff's contention that the ALJ's assessment of her physical abilities was not supported by substantial evidence equally is misplaced. Plaintiff asserts that the ALJ failed to give proper weight to her treating physician's assessment of her ability to meet the physical demands of substantial gainful activity. Specifically, she maintains that Dr. Patel's indication that she could only lift and carry 2-3 pounds frequently and 10 pounds occasionally is below the functional ability needed to perform the companion sitter position.

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)); see also Allen v. Bowen, 881 F.2d 37, 41 (3d Cir. 1989); Podedworney v. Harris, 745 F.2d 210, 217-18 (3d Cir. 1984). And reports from consulting physicians who have examined the claimant and rendered assessments on conditions within their respective area of expertise are to be given appropriate evidentiary weight, which will vary based on the circumstance and the other medical evidence presented. Gordils v. Secretary of Health and Human Services, 921 F.3d 327, 328 (1st Cir. 1990) (citing Rodriguez v. Secretary of Health and Human Services, 647 F.2d 218, 223 (1st Cir. 1981) (weight to be afforded a consulting/examining physician's report "will vary with the circumstances, including the nature of the illness and the information provided the expert."). For example, where the consulting/examining physician's report constitutes the only probative medical evidence on the condition in question, it may be entitled to great or even controlling weight. See Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995) (examining physician's report accorded significant weight where it was only medical assessment on point and corroborated by other evidence). Similarly, examining physician's reports that rest on objective clinical test results may be entitled to significant or controlling weight. See

Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

The ALJ was within his discretion to discount Dr. Patel's assessment that plaintiff could not frequently carry more than 2-3 pounds or frequently lift more than 10 pounds. The ALJ aptly observed that this opinion conflicts with other reported observations regarding plaintiff's limitations. Despite restricting plaintiff as indicated above, Dr. Patel reported that she had normal power and no weakness in her extremities. R. 198, 200. He also noted that she had normal sensation and reflexes, was able to squat, walk on her heels and toes, and walked with a normal gait. R. 200. Furthermore, Dr. Patel indicated she was unrestricted in the ability to walk and stand throughout the eight hour workday. When considered as a whole and in conjunction with the other evidence of record, Dr. Patel's assessment of plaintiff's physical abilities supported rather than undermined the ALJ's determination that plaintiff could meet the demands of a companion sitter.

A companion sitter is a light duty position with a Specific Vocational Preparation ("SVP") of 3, making it semi-skilled. R. 46. Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. 404.1567(b).

Although the DOT recognizes the companion sitter job as light work, the actual lifting requirements for this job may be negligible. DOT at 309.677-010. The reason a companion sitter job is considered light work is because the job requires a significant amount of walking or standing, each of which are physical activities plaintiff can perform according to both Dr. Patel, plaintiff's treating physician, and the state agency physician's RFC. Id. In this regard, Dr. Patel's conclusion mirrors the conclusion in the other medical RFC of record. R. 226. Thus, the medical findings concerning plaintiff's physical capacity consistently supported the ALJ's assessment on the key attributes of the position identified by the vocational expert.

Moreover, the position of companion sitter is remarkably similar to the type of tasks that plaintiff performs everyday in caring for her father. Plaintiff acknowledged she can perform the

8

activities of daily living, as well as act as primary caretaker for her father, without serious limitation. R. 43-44. She can drive, take out the trash, cook, wash clothes, clean the house and unload groceries. R. 40, 42, 93-94, 109-10. There is no evidence of any impairment that would preclude her from performing for others the same tasks she performs on a daily basis for herself and her father. Therefore, substantial evidence supports the ALJ's decision that the plaintiff could perform work as a companion sitter, a job that exists in significant numbers in the regional and national economy.

The record also contains sufficient evidence to support the ALJ's assessment of plaintiff's subjective complaints of disabling pain and limitations. Although subjective complaints need not be fully confirmed by objective medical evidence in order to be afforded significant weight, see Smith v. Califano, 637 F.2d 968, 972 (3d Cir. 1981), subjective complaints that are not or are only minimally supported by objective medical evidence can provide a valid basis for questioning a claimant's credibility. Here, the medical evidence did not suggest or support the degree of limitations and disabling symptoms claimed by plaintiff. Plaintiff's medical records contained test results that were not indicative of conditions that would be expected to produce a disabling degree of pain and limitations. Dr. Patel, the physician who treated plaintiff the longest, reported based on actual testing and observation that plaintiff had normal power and no weakness in her extremities, normal sensation and reflexes, was able to squat, walk on her heels and toes, and walked with a normal gait . R. 198, 200. In addition, she was able to perform the activities of daily living without restriction, drive short distances, do housework, care for her father and grandson and spend time with friends. Thus, there was more than a fair basis for the ALJ to discount the limitations claimed by plaintiff. See Rosario v. Sullivan, 819 F. Supp. 473 (W.D. Pa. 1992).

It is well-settled that disability is not determined merely by the presence of impairments, but by the effect that the impairments have on an individual's ability to perform substantial gainful employment. Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991). In making

assessments of the impact impairments have on a particular individual's ability to do work related activities, determinations of credibility are committed to the sound discretion of the ALJ and must be upheld where there is substantial evidence to support them. <u>Hartranft</u>, 181 F.3d at 362. Here, the record contained substantial evidence to support the ALJ's assessment of the medical evidence of record as a whole and plaintiff's subjective complaints. Accordingly, the Commissioner's decision must be affirmed.

*DS Cercone*
_____
David Stewart Cercone
United States District Judge

cc:	Charles T. Pankow, Esquire
	1733 Potomac Avenue
	Pittsburgh, PA 15216

	Karl Lee, AUSA